IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BISHOP'S PROPERTY & INVESTMENTS,      *
LLC, and ROBERT WAYNE BISHOP,
individually and on behalf of a       *
class of all persons similarly
situated,                             *

    Plaintiffs,                       *

vs.                                   *        CASE NO. 4:05-CV-126(CDL)

PROTECTIVE LIFE INSURANCE             *
COMPANY, a corporation,
                                      *
    Defendant.                        *

                                              *

O R D E R

    This is a putative class action arising from Defendant's alleged failure to refund unearned credit insurance premiums to its insureds when those insureds paid off their underlying loans before the loan termination date.  Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 169).  As discussed below, Defendant's motion is granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

    Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the burden to show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the summary judgment movant

meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact.  *Id.* at 324.   The nonmoving party "must go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324.

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Anderson*, 477 U.S. at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for Plaintiffs—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the record reveals the following:

2

**1.    Defendant's Single Premium Credit Insurance**

Defendant sells credit insurance.  Defendant's automobile credit life and credit disability insurance products cover loans made for the purchase of a car or truck.  Credit life insurance pays the balance of the auto loan if the policyholder dies, and credit disability insurance pays the monthly payments on the auto loan if the policyholder becomes disabled.  At issue in this action are Defendant's "single premium" credit insurance products.  With a "single premium" policy, the insured pays the entire premium up front, generally by financing the premium along with the underlying auto loan.  The insurance coverage is typically set to last for the term of the loan.  If the auto loan is paid off early, the insurance stops, and the insured is generally entitled to a refund of part of the pre-paid premium: the unearned premium.

**2.    Plaintiff's Credit Insurance Policy**

On October 11, 2004, Plaintiff Bishop ("Plaintiff") purchased a 2005 Chevrolet Tahoe from Daniels Chevrolet-Oldsmobile, Inc. ("Daniels"), in Swainsboro, Georgia.  (Compl. ¶ 7.)  In connection with the purchase, Daniels offered Plaintiff the opportunity to purchase credit insurance issued by Defendant.  The certificate of insurance offered to Plaintiff contained an "application" section, which stated:

> I am not insurable for any coverage if during the past 2 years
> I have been diagnosed or treated (including medication) for (a)
> A condition, disease or disorder of the brain, heart, lung(s),
> liver, kidney(s), nervous system or circulatory system; or (b)

3

> Tumor; Cancer; Uncontrolled High Blood Pressure; Diabetes;
> Alcoholism; Drug Abuse; Emotional or Mental Disorder; Acquired
> Immune Deficiency Syndrome (AIDS); the AIDS Related Complex
> (ARC); or ever received test results showing evidence of
> antibodies of the AIDS virus (HIV Positive).

(Ex. A to Compl. 1.) In addition, Plaintiff received a copy of Defendant's "Credit Insurance Disclosure Statement," which provided, among other things, that Defendant "may void [Plaintiff's] certificate/policy" if Plaintiff misrepresented his health. (Ex. A to Compl. 5.) A Daniels representative asked Plaintiff some health questions, and Plaintiff did not disclose any adverse health history. (Pl.'s Dep. 194:8-195:5, June 7, 2007 [hereinafter Pl.'s 2007 Dep.].) Plaintiff signed the application as the "insured." In doing so, he acknowledged that he had read and understood the application and that he was insurable for the coverage requested. Defendant issued a certificate of insurance to Plaintiff on October 11, 2004.

Plaintiff made a single premium payment for the insurance coverage at the time of purchase, and he financed both the contract for the vehicle and the insurance premium through his lender, GMAC. The insurance certificate from Defendant provides:

> You have the right to cancel this insurance with us at any time.
> You must make your cancellation request in writing. Insurance
> stops on the earliest of the following dates: (1) the date your
> cancellation request [sic]; (2) the Expiration Date as shown in
> your Schedule; (3) when your loan is paid in full; (4) when your
> loan is renewed; (5) when your loan is refinanced; (6) when the
> creditor repossess [sic] your loan's collateral; (7) when the
> Creditor files an Affidavit of Repossession; or (8) when your
> loan otherwise stops. When we [Defendant] are notified, or when
> we find out, the Insurance has stopped prior to the Expiration
> Date, we will make a refund of the unearned premium.

4

(Ex. A to Compl. 3.)

Initially, Bishop's Property and Investments, LLC ("Bishop's Property")[1] was a co-insured on the policy, but a change endorsement was issued on November 23, 2004, changing the co-insured from "Bishop's Property & Investments" to "None" and stating that "only Robert W. Bishop is covered" under the certificate. (Ex. 2 to Hallissey Aff., Feb. 27, 2006 [hereinafter Hallissey Aff. I], Change Endorsement.)  At all times, the insured's address on the certificate was 2862 Lee Road 330, Smiths, Alabama, 36877, the address of the residence Plaintiff owns. (Ex. A to Compl.; Ex. 2 to Hallissey Aff. I; Pl.'s 2007 Dep. 15:2-7.)

On September 16, 2005, Plaintiff paid the entire amount owed on the loan he financed through GMAC.  He did not notify Defendant or Daniels that he had paid off his loan.  GMAC sent Plaintiff a letter dated September 27, 2005, advising him:

> Your contract included a charge for credit life and/or disability insurance.  Now that you have paid the entire amount financed on your contract, this insurance serves no purpose and you may be able to get a refund of part of the premium if you cancel it.  Please contact your dealer or your insurance company to find out about getting a refund.

(Ex. B to Compl.)  Defendant and Daniels were copied on the letter.

After it received the letter from GMAC, Defendant sent Daniels a report stating that Plaintiff's credit insurance had been cancelled.  On November 2, 2005, Defendant sent Daniels a check for

---

[1]Plaintiff Bishop is the sole owner of Bishop's Property, an Alabama limited liability corporation.

5

$1,550.82, which, according to Defendant, included a portion of Plaintiff's unearned premium. (Hallissey Aff. I ¶ 22.) On November 14, 2005, Plaintiff filed this lawsuit. On December 5, 2005, Daniels sent a check for $1,511.98 to the Alabama address it had on file for Plaintiff, which is also the address listed on Plaintiff's certificate of insurance. On January 23, 2006, Daniels sent a second check in the amount of $1,237.07 to the same Alabama address. Plaintiff did not accept either check. According to Defendant, the two checks tendered to Plaintiff and totaling $2,749.05 amounted to the entire unearned premium due to Plaintiff. Plaintiff denies that he received a "prompt, full refund of [his] unearned premiums," but it is unclear whether he disputes that the total amount due to him was $2,749.05. (*See, e.g.*, Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts at 2 ¶ 4 [hereinafter Pl.'s Resp. to SMF].) In October of 2007, shortly after the Court denied Defendant's motion for leave to amend its Answer to add a counterclaim for rescission of the insurance contract and after Defendant argued for rescission in its summary judgment motion, Defendant tendered a full refund of premiums to Plaintiff. Plaintiff did not accept the refund.

## 3.    **Plaintiff's Residence**

According to the first paragraph of his Complaint, Plaintiff is a resident of Alabama. (Compl. ¶ 1.) When he purchased the Tahoe from Daniels, he gave Daniels the address of his Alabama residence, and that address is listed as the insured's address on Plaintiff's

credit insurance certificate.  Plaintiff put an Alabama license plate on the Tahoe.  (Pl.'s 2007 Dep. 146:17-22.)  Plaintiff made payments for the Tahoe with business checks[2] imprinted with the address of his Alabama residence.  (Ex. 2 to Pl.'s 2007 Dep.)  Plaintiff made the final payment for the Tahoe with a personal check drawn on Columbus Bank & Trust in Columbus, Georgia, and bearing the address of his Alabama residence.  (*Id.*)  Plaintiff receives mail at the residence in Alabama, and GMAC sent the September 27 letter to that address.  (Ex. B to Compl.)  In addition, the unearned premium refund checks were tendered to Plaintiff's Alabama address.

However, for purposes of this motion, Plaintiff "denies that he actually resides in Alabama," and contends that he "lives 90-99% of his time in Columbus, Georgia."  (Pl.'s Resp. to SMF at 4 ¶ 1.)  The Alabama residence, according to Plaintiff, is simply a cabin on Goat Rock Lake where Plaintiff occasionally spends weekends.  (Pl.'s Resp. to SMF at 10 ¶ 27.)  Plaintiff works in Columbus, Georgia, and he currently pays income taxes in Georgia.  (Pl.'s 2007 Dep. 63:13-64:3, 74:14-18.)  In his 2007 deposition, Plaintiff testified that he had lived in Columbus for at least four years and that he had never lived full time at the lake.  (Pl.'s 2007 Dep. 18:2-22, 19:21-20:12.)  However, in a March 23, 2005 deposition in an unrelated matter, Plaintiff testified that he lived by himself at his Alabama residence

---

[2]The business was The Red Barn Antiques and Auction, one of Plaintiff's Alabama businesses.   The business checks were drawn on Colonial Bank in Columbus, Georgia.

and that he had lived there for five years.  (Pl.'s Dep. 7:11-18, Mar. 23, 2005 [hereinafter Pl.'s 2005 Dep.].)

### 4.   Plaintiff's Alleged Misrepresentation

Defendant contends that Plaintiff suffered from a mental or emotional disorder when he applied for the credit insurance policy on October 11, 2004.  It is not seriously disputed that if Plaintiff had disclosed to Defendant a diagnosis of and treatment for emotional disorders, Defendant would not have issued credit insurance to him. (Harges Aff. ¶ 6, Aug. 10, 2007.)  It is also not disputed that Plaintiff has been prescribed the prescription drug Ativan since approximately 2000.  From October 11, 2002 through October 11, 2004, Plaintiff filled his prescription for Ativan twelve times.  Plaintiff admits that he takes Ativan for stress, anxiety and depression. (Pl.'s 2007 Dep. 41:5.)  Defendant contends that Plaintiff's pharmaceutical and medical records reveal a "diagnosis and treatment of stress, anxiety and depression."  (Harges Aff. ¶ 5.)  However, Plaintiff denies that he has ever been diagnosed with or treated for a mental or emotional disorder.  (Pl.'s 2007 Dep. 46:14-16.) Furthermore, Dr. Michael Sims, the physician who prescribed Ativan for Plaintiff, states that he has never diagnosed or treated Plaintiff for an emotional or mental disorder.  (Sims Aff. ¶¶ 3-5, Sept. 7, 2007.)  Rather, Dr. Sims states that he treated Plaintiff for temporary situational anxiety and normal grief reaction, which are not mental or emotional disorders.  (Sims Aff. ¶ 6.)

8

**5.   Plaintiff's Claims**

Plaintiff brings claims for (1) breach of contract "for failing to refund unearned premiums in accordance with the terms of [the] contract" (Compl. ¶ 34(a)); (2) tort claims for negligence and intentional misconduct in the administration of Defendant's credit insurance policies (Compl. ¶ 34(c)-(d)); (3) attorney's fees under O.C.G.A. § 13-6-11 (Compl. ¶ 34(e)); and punitive damages (Compl. ¶ 34(f)).  Plaintiff seeks compensatory damages for breach of contract "in the amount of unearned premium owed pursuant to the contracts of insurance, plus interest."  (Compl. ¶ 35.)  Plaintiff also seeks "an injunction requiring [Defendant] to take remedial action so as to ensure that in the future insureds will receive refunds to which they are legally and contractually entitled."  (Compl. ¶ 39.)

DISCUSSION

**I.   Plaintiff's Tort Claims**

Plaintiff brings tort claims for negligence and intentional misconduct in the administration of Defendant's credit insurance policies.  Before the Court can determine whether Plaintiff's tort claims are viable, the Court must decide which law is applicable to those claims.  Plaintiff contends that Georgia law governs his tort claims, while Defendant argues that Alabama law applies.  The Court must apply the choice of law rules of Georgia, the forum state.  *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006).  "'Under the rule of lex loci

9

delicti, tort cases are governed by the substantive law of the state where the tort was committed.'" *Id.* (quoting *Fed. Ins. Co. v. Nat'l Distrib. Co.,* 203 Ga. App. 763, 765, 417 S.E.2d 671, 673 (1992)); *accord Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816, 621 S.E.2d 413, 419 (2005). The parties agree that under this rule, the place of wrong is where the injury is sustained. *See Int'l Bus. Machs. Corp. v. Kemp*, 244 Ga. App. 638, 641, 536 S.E.2d 303, 306 (2000). The parties also agree that the location of an economic injury is generally the injured party's place of residence.[3]  *E.g., id.*  The parties disagree, however, on where Plaintiff resided when Defendant allegedly failed to refund his unearned premium. Plaintiff contends that he resided in Georgia, while Defendant contends that he resided in Alabama.[4]

Plaintiff's Complaint, filed November 14, 2005, states that Plaintiff is a resident of Alabama. (Compl. ¶ 1.) Plaintiff purchased the Tahoe and the insurance policy in Georgia, but he gave Daniels the address of his Alabama residence for the paperwork, and he put an Alabama license plate on the Tahoe. The insurance certificate at issue listed Plaintiff's Alabama address as the insured's address, and Plaintiff never gave Defendant or Daniels a

---

[3]In addition, the parties agree that the economic injury alleged here occurred in the fall of 2005, when Defendant allegedly did not promptly refund the unearned premium to Plaintiff.

[4]The parties agree that if Plaintiff resided in Alabama when Defendant failed to refund the unearned premium, Alabama law applies, while Georgia law applies if Plaintiff resided in Georgia.

10

change of address.  All correspondence regarding the certificate, including the tender of the unearned premium refund, was sent to Plaintiff's Alabama address.  Furthermore, Plaintiff testified in 2005 that he lived by himself at his Alabama residence and that he had lived there for five years.  (Pl.'s 2005 Dep. 7:11-18.)  Now, Plaintiff denies that he resides in Alabama.  As evidence of this, he points to his 2007 statements, which show that he currently spends 90-99% of his time in Georgia, that he currently pays income taxes in Georgia, and that he has lived in Columbus since at least 2003 and has never lived full time at the lake.

Defendant asserts that judicial estoppel prevents Plaintiff from now taking the position that he is not an Alabama resident or, at least, that he was not an Alabama resident in the fall of 2005, when the alleged injury at issue here occurred.  Under the doctrine of judicial estoppel, "a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. [It] is an equitable concept intended to prevent the perversion of the judicial process.'" *Ajaka v. BrooksAmerica Mortgage Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).  The courts consider two primary factors in determining whether to apply judicial estoppel.  First, the courts consider whether the party is asserting a position that is clearly inconsistent with a position taken under oath in a prior proceeding

11

and "whether the party successfully persuaded a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled." *Ajaka*, 453 F.3d at 1344 (internal quotation marks omitted).   Second, the inconsistent positions "must have been calculated to make a mockery of the judicial system." *Id.* (internal quotation marks omitted).

Here, there is no question that Plaintiff testified under oath in a previous case that he lived at his Alabama residence in 2005 and that he now contends that he has never lived at the Alabama residence.   There is also no question that this Court, which also presided over the previous action, accepted Plaintiff's position in the previous case that he was an Alabama resident. *See Bishop v. Bombardier, Inc.*, 399 F. Supp. 2d 1372, 1374 (M.D. Ga. 2005).[5] Therefore, the Court finds that Plaintiff is asserting a position that is clearly inconsistent with his position in a previous case. The next question is whether Plaintiff's position here is "calculated to make a mockery of the judicial system."   *Ajaka*, 453 F.3d at 1344 (internal quotation marks omitted).

---

[5]Plaintiff's state of residence was material in the previous matter because it was a diversity action; the Court found that diversity jurisdiction was proper *because* Plaintiff was an Alabama resident and the defendants were not.  *Bishop*, 399 F. Supp. 2d at 1374.  While it may have been immaterial in that case whether Plaintiff was a resident of Georgia or Alabama, the Court accepted Plaintiff's position that he was an Alabama resident.   *Id.*

To justify applying judicial estoppel, the intent must be "cold manipulation and not an unthinking or confused blunder[.]" *Id.* at 1345 n.7 (internal quotation marks omitted). Here, there is clearly a calculated assertion of divergent positions—Plaintiff is even asserting a position divergent from the one he took in his own Complaint. Plaintiff would prefer to be considered a Georgia resident here because he believes that Georgia law would be more favorable than Alabama law to his tort claims. Thus, the Court finds that it is appropriate to apply judicial estoppel. Plaintiff may not now assert that he has never lived at the Alabama residence or that he was not a resident of Alabama during 2005. This, along with the facts recounted above, including the address on the insurance certificate, the correspondence regarding the insurance and the tender of the unearned premium refund, lead the Court to conclude that the injury alleged in this case occurred in Alabama. Therefore, the Court will apply Alabama law to Plaintiff's tort claims.

Both parties have pointed the Court to Alabama law on this issue. Under Alabama law, a claim will not lie in tort for breach of a contractual duty. *E.g., C & C Prods., Inc. v. Premier Indus. Corp.*, 290 Ala. 179, 186, 275 So.2d 124, 130 (1972). However, a tort claim may arise from a duty that is owed independent of any duty established by the contract. *Vines v. Crescent Transit Co.*, 264 Ala. 114, 119, 85 So.2d 436, 440 (1956); *see also Hamner v. Mut. of Omaha Ins. Co.*, 49 Ala. App. 214, 218, 270 So.2d 87, 90 (1972) ("[I]f there

is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or tort.").

Even if Alabama law applies to Plaintiff's tort claim, Plaintiff maintains that since the insurance contract was issued in Georgia, Georgia law, O.C.G.A. § 33-31-9, creates the duty upon which Plaintiff's tort claim rests. For purposes of the pending motion, the Court accepts this argument. O.C.G.A. § 33-31-9 arguably creates a duty to provide a prompt refund of unearned premiums independent of the contract. In 2004, O.C.G.A. § 33-31-9 provided, in relevant part:

> Each individual policy, notice of proposed insurance, or group certificate of credit life insurance and credit accident and sickness insurance shall provide that, in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of premium due shall be paid or credited promptly to the person entitled to such refund[.]

O.C.G.A. § 33-31-9 (2004).[6] This statute is "purely regulatory of the insurance industry and requires that certain provisions be written into a policy." *Hamner*, 49 Ala. App. at 217, 270 So.2d at 90.

Under Alabama law, "[a] failure to comply with such provisions as they are placed in the policy as a covenant or condition therein,

---

[6]The statute was updated in 2005, and it still requires such a provision in all credit insurance policies, with several modifications irrelevant to the summary judgment motion. O.C.G.A. § 33-31-9 (2005).

14

could only amount to a breach of the policy." *Id.* "Whether the provisions of a contract of insurance are statutory or are reached by agreement of the parties, the ordinary remedy for non-compliance is by breach of contract." *Id.* at 217-18, 270 So.2d at 90.[7] Therefore, the Court finds that, under Alabama law, Defendant's alleged failure to provide a prompt refund of the unearned premium gives rise only to a breach of contract claim, and not to any tort claims. Accordingly, Defendant is entitled to summary judgment on Plaintiff's tort claims. Furthermore, Defendant is entitled to summary judgment on Plaintiff's claim for punitive damages under O.C.G.A. § 51-12-5.1 because Plaintiff's only remaining claim is for breach of contract, and punitive damages are not available in actions for breach of contract.[8] O.C.G.A. § 51-12-5.1 ("Punitive damages may be awarded only in . . . tort actions . . . ."); O.C.G.A. § 13-6-10; *see also Mikart, Inc. v. Marquez*, 211 Ga. App. 209, 212, 438 S.E.2d 633, 636 (1993) ("[P]unitive damages are not recoverable for breach of contract, even if the breaching party acted in bad faith . . . .").

---

[7] The Court recognizes that Georgia courts appear to view statutes like O.C.G.A. § 33-31-9 differently, *e.g., J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 375, 634 S.E.2d 123, 127 (2006), but, as the parties agree, if Plaintiff is an Alabama resident, then Georgia law does not apply here.

[8] Plaintiff's contract claims arise under Georgia law because the insurance certificate at issue was applied for and issued in Georgia. *See Kemp*, 244 Ga. App. at 641, 536 S.E.2d at 307 (under lex loci contractus, "contracts are to be governed as to their nature, validity, and interpretation by the law of the place where they were made").

## II.  Plaintiff's Breach of Contract Claim

Plaintiff also brings a claim for breach of contract.  Defendant apparently does not contest that if its insurance contract with Plaintiff is valid there are genuine issues of material fact as to whether Defendant breached its promise to provide a refund of the unearned premium.  However, Defendant argues that Plaintiff made a material misrepresentation in his application for insurance and that the contract is therefore void.  Specifically, Defendant contends that Plaintiff was being treated for an emotional or mental disorder when he applied for the credit insurance but that he did not disclose that treatment to Defendant.  Had Defendant known of the alleged emotional or mental disorder, it would not have issued the policy.

The Court finds that genuine issues of material fact exist as to whether Plaintiff made material misrepresentations that would prevent him from recovering under the policy.  The insurance certificate does not define "mental or emotional disorder."  "'In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.'"  *Harkins v. Progressive Gulf Ins. Co.*, 262 Ga. App. 559, 560, 586 S.E.2d 1, 2 (2003) (quoting *Ga. Farm Bureau Mut. Ins. Co. v. Huncke*, 240 Ga. App. 580, 580-81, 524 S.E.2d 302, 303 (1999)).  Here, there is at least a genuine issue of material fact as to whether Plaintiff suffered from an emotional or mental disorder in October of 2004.  While the records show that

16

Plaintiff did regularly take medication normally prescribed for stress, anxiety and depression, Plaintiff's physician stated that he had never diagnosed Plaintiff with an emotional or mental disorder and he was only treating Plaintiff for temporary situational anxiety and normal grief reaction, which are not emotional or mental disorders.  Based on this, a reasonable jury could conclude that Plaintiff did not suffer from a mental or emotional disorder when he applied for the credit insurance.  In light of this ruling, it is unnecessary for the Court to determine whether Defendant can rely upon a material misrepresentation defense when it cannot assert a counterclaim for rescission.[9]  Defendant is not entitled to summary judgment on Plaintiff's breach of contract claim.

### III. Plaintiff's Claim for Attorneys' Fees

Defendant moves for summary judgment on Plaintiff's claim for attorneys' fees, brought under O.C.G.A. § 13-6-11.[10]  O.C.G.A. § 13-6-

---

[9]The Court previously denied Defendant's motion for leave to amend its Answer to add a counterclaim for rescission because Defendant failed to tender Plaintiff's premium prior to seeking rescission. (Order, Oct. 9, 2007, Doc. 212.)

[10]The Court analyzes Plaintiff's claim for attorneys' fees under Georgia law because the alleged bad faith relates to Defendant's conduct in performing the contract, which was made in Georgia.  The outcome would not change if the Court analyzed this claim under Alabama law.  The Alabama statute only applies to actions in "court[s] of record in [Alabama]," and, in any event, if Alabama law applied, Plaintiff would not be entitled to attorneys' fees.  Alabama law permits recovery of attorneys' fees for bad litigation conduct: it allows recovery against a party "who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification[.]"  Ala. Code § 12-19-272(a).  Plaintiff has pointed to no evidence that would entitle him to attorneys' fees under this statute.

17

11 permits attorneys' fees where the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]"  The "bad faith" contemplated by O.C.G.A. § 13-6-11 "is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen." *Monterrey Mexican Rest. of Wise, Inc. v. Leon*, 282 Ga. App. 439, 451, 638 S.E.2d 879, 890 (2006) (internal quotation marks omitted).

Plaintiff bases his claim for attorneys' fees upon Defendant's failure to refund the unearned premium to Plaintiff after Defendant was notified that Plaintiff had paid off the loan and the insurance thus stopped. The question of whether a party acted in bad faith is normally a question for the jury, to be determined based on the facts and circumstances in the case.  *E.g., Freightliner Chattanooga, LLC v. Whitmire*, 262 Ga. App. 157, 163, 584 S.E.2d 724, 730 (2003). However, if there is no evidence of bad faith, then summary judgment on the attorneys' fees claim is appropriate.  *Garrett v. Women's Health Care of Gwinnett, P.C.*, 243 Ga. App. 53, 55, 532 S.E.2d 164, 167 (2000).

Bad faith "may be found in how the defendant acted in his dealing with the plaintiff." *Foxchase, LLLP v. Cliatt*, 254 Ga. App. 239, 240, 562 S.E.2d 221, 224 (2002).  Mere failure to pay a contractual obligation does not constitute bad faith sufficient to

18

permit recovery under O.C.G.A. § 13-6-11.  *See, e.g., Beacon Indus., Inc. v. Vanderbunt Concrete, Ltd.*, 172 Ga. App. 573, 575, 323 S.E.2d 871, 874 (1984).  Rather, bad faith requires "ill will or furtive design with regard to the performance of the contract." *Williams Tile & Marble Co. v. Ra-Lin & Assocs., Inc.*, 206 Ga. App. 750, 752, 426 S.E.2d 598, 601 (1992) (internal quotation marks omitted).  In support of his bad faith claim, Plaintiff has pointed to nothing more than Defendant's failure to provide a refund of the unearned premium. He has pointed the Court to no evidence of "ill will" or "furtive design."  Accordingly, the Court finds that Plaintiff has not pointed the Court to evidence sufficient to create a genuine issue of material fact as to whether Defendant acted in bad faith.

Plaintiff also claims that he is entitled to attorneys' fees because Defendant has been stubbornly litigious and put Plaintiff to unnecessary trouble and expense.  However, because a bona fide controversy exists as to whether Defendant breached its promise to provide a refund of the unearned premium, attorneys' fees are not authorized under O.C.G.A. § 13-6-11.  *See Backus Cadillac-Pontiac, Inc. v. Brown*, 185 Ga. App. 746, 747, 365 S.E.2d 540, 541 (1988). For these reasons, Defendant is entitled to summary judgment on Plaintiff's claim for attorneys' fees.

**IV.  Claim of Bishop's Property**

Defendant contends that Bishop's Property is not a proper party in this case.  The Court agrees.  Plaintiff argues that because Bishop's Property was a co-debtor on the retail installment contract for the Tahoe, Bishop's Property, along with Plaintiff, paid the premium for the credit insurance and has an interest in receiving a refund of the unearned premium.  However, once Bishop's Property was removed as a co-insured, only Plaintiff was insured under the certificate, which contemplates refunding unearned premiums to the insured.[11]  Plaintiff points to no evidence that Bishop's Property was entitled to a refund of the unearned premium after it was removed as co-insured.  For these reasons, the Court grants Defendant's Motion for Summary Judgment as to all claims by Bishop's Property.

CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 169) is granted in part and denied in part.  The Court denies Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim.  The Court grants Defendant's Motion for Summary Judgment as to (1) Plaintiff's tort claims, (2) Plaintiff's claim for punitive damages, (3) Plaintiff's claim for attorneys' fees, and (4) all claims by Bishop's Property.

---

[11]*See also* O.C.G.A. § 9-2-20(a) ("As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent.").

20

IT IS SO ORDERED, this 6th day of February, 2009.


                                        S/Clay D. Land
                                        CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE

21