IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BISHOP'S PROPERTY & INVESTMENTS,  *
LLC, and ROBERT WAYNE BISHOP,
individually and on behalf of a   *
class of all persons similarly
situated,                         *

    Plaintiffs,                  *

vs.                               *      CASE NO. 4:05-CV-126(CDL)

PROTECTIVE LIFE INSURANCE         *
COMPANY, a corporation,
                                  *
    Defendant.                   *

                                  *

O R D E R

This putative class action arises from Defendant's alleged failure to refund unearned credit insurance premiums to its insureds when those insureds paid off their underlying loans before the loan termination date.  Presently pending before the Court is Plaintiff's motion to certify the class.  (Docs. 86 & 230).  During the course of this litigation, the Court foreshadowed the fundamental issue that it must decide today: whether a class can be certified consisting of persons who have never requested a refund.  (Order, Aug. 31, 2007, at 14 n.7, Doc. 202.)  The Court finds that when an insured has not requested a refund and Defendant is not aware that one is owed, each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case.  Therefore, individual issues will predominate over common ones, making class certification inappropriate.  Accordingly, Plaintiff's motion to certify is denied.

FACTUAL BACKGROUND[1]

## 1.   Defendant's Single Premium Credit Insurance

Defendant sells credit insurance.  Defendant's automobile credit life and credit disability insurance products cover loans made for the purchase of a car or truck.  Credit life insurance pays the balance of the auto loan if the policyholder dies, and credit disability insurance pays the monthly payments on the auto loan if the policyholder becomes disabled.  At issue in this action are Defendant's "single premium" credit insurance products.  With a "single premium" policy, the insured pays the entire premium up front, generally by financing the premium along with the underlying auto loan.  The insurance coverage is typically set to last for the term of the loan.  If the auto loan is paid off early, the insurance stops, and the insured is generally entitled to a refund of part of the pre-paid premium: the unearned premium.

## 2.   The Putative Class

Plaintiff seeks to represent a nationwide class on behalf of himself and all persons similarly situated, claiming that Defendant breached its contract with its insureds by failing to refund their unearned premiums when the underlying loans were paid off.  (Pl.'s

---

[1]The Court decides this motion on the written record before it consisting of affidavits, depositions, and exhibits.  The parties did not request an evidentiary hearing to provide oral testimony, and the Court finds that such a hearing is not necessary.  The Court notes that the facts relevant to the Motion to Certify are not generally disputed; the parties simply disagree on how the law applies to the facts.

Br. in Supp. of Mot. for Class Certification 1 [hereinafter Pl.'s Br.].)  Plaintiff proposes the following class definition:

> All individuals during the applicable time period: (a) who are residents of the United States and (b) who have been or will be insured under a Protective Life credit insurance policy, and (c) whose underlying loan stopped or could stop prior to the expiration of the term of the indebtedness, and (d) who were not paid or might not be paid a refund of unearned premium.

(Pl.'s Reply in Supp. of Mot. for Class Certification 2 [hereinafter Pl.'s Reply].)

**3.   Relevant Contract Provisions**

The majority of single premium insurance certificates issued by Defendant, including Plaintiff Bishop's, contain the following refund provision: "When we are notified, or when we find out, the Insurance has stopped prior to the Expiration Date, we will make a refund of the unearned premium."  (*E.g.*, Ex. A to Compl. 3; *see also* Ex. 9 to Def.'s Submission in Opp'n to Pl.'s Mot. for Class Certification 6 [hereinafter Def.'s Opp'n] (also notifying insured of a right to refunds: "If you believe you are entitled to a refund and you have not received one, you should contact us . . . .").)  Some certificates state that a refund will be made but do not contain any refund triggers.  (*E.g.*, Ex. 12 to Def.'s Opp'n at 9 ("If any insurance is terminated prior to the scheduled maturity date of the indebtedness, We will refund any unearned premium to the Creditor. . . ."); Ex. 13 to Def.'s Opp'n at 4 ("If your insurance stops before the Expiration Date . . . you will be given a refund or a credit on your account of unearned premium."); Ex. 14 to Def.'s Opp'n at 5

("Any unearned premium will be . . . credited to the Insured's account.").)

Other insurance certificates require the insured to inform Defendant of an early loan payoff or to request a refund after an early loan payoff. (Ex. 7 to Def.'s Opp'n at 1 ("NOTICE: IN ORDER FOR PROTECTIVE TO PROCESS A REFUND OF UNEARNED PREMIUM, IT IS YOUR RESPONSIBILITY TO INFORM US OF THE EARLY PAYOFF OF YOUR LOAN."); Ex. 8 to Def.'s Opp'n at 4 ("Your insurance will . . . stop when a request for refund is made by the creditor or the insured after . . . your loan is paid in full[.]"); Ex. 10 to Def.'s Opp'n at 1 ("If . . . your insurance ends prior to its expiration date, you must notify us of such an occurrence in order to receive a refund of unearned premium.").)

Most certificates provide that the insurance stops when the loan is paid in full. (*E.g.*, Ex. A to Compl. 3). However, under some certificates, insurance does not automatically stop when the loan is paid in full. (*E.g.*, Ex. 8 to Def.'s Opp'n at 4 ("Your insurance will . . . stop when a request for refund is made by the creditor or the insured after . . . your loan is paid in full[.]"); *see also* Ex. 11 to Def.'s Opp'n at 4 (stating that the policy may be terminated by mutual agreement of the creditor and Defendant, by the creditor or Defendant upon 30 days' written notice, or for nonpayment of premium).)

The dilemma presented by Plaintiff's motion for class certification is that although all of the insurance certificates make it clear that the insured is entitled to a refund of the unearned premium upon the early termination of the credit insurance, the event that triggers the termination of the insurance–early payoff of the underlying loan–is not something that is within Defendant's control. Therefore, an unearned premium may exist, but Defendant may have no knowledge that the refund is owed.  Questions presented by Plaintiff's motion to certify include (1) when and under what circumstances does Defendant's failure to make the refund constitute a breach of the insurance contract and (2) whether the alleged breach is consistent and uniform as to each of Defendant's insureds such that class treatment is appropriate.

DISCUSSION

Plaintiff has the burden to show that the putative class meets the prerequisites of Federal Rule of Civil Procedure 23(a)[2] and that at least one of the requirements set forth in Rule 23(b) is met. Fed. R. Civ. P. 23(b); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250

---

[2]The prerequisites of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

(11th Cir. 2004).   Plaintiff seeks certification of a class under Rules 23(b)(2) and 23(b)(3).

Certification under Rule 23(b)(3) requires that Plaintiff meet the prerequisites of Rule 23(a), "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The commonality element of Rule 23(a)(2) requires that Plaintiff demonstrate that common issues of law or fact exist and affect all class members.   Fed. R. Civ. P. 23(a)(2).   Under Rule 23(b)(3), Plaintiff must also show that common issues predominate over individual questions. *Klay*, 382 F.3d at 1254. "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Id.* (internal quotation marks omitted).   To determine whether class or individual issues predominate, the Court must take into account "the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Id.* (internal quotation marks and citation omitted).   "Common issues of fact and law predominate if they have a direct impact on every class member's entitlement to injunctive and monetary relief." *Id.* at 1255 (internal quotation marks omitted).

6

Two illustrative cases demonstrate the application of these requirements. In *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2003), the Eleventh Circuit approved class certification of gasoline dealers' breach of contract claims against Exxon, where the dealers' contracts with Exxon were all materially similar and where Exxon allegedly breached a uniform duty it owed to all class members by secretly implementing a price change that applied equally to all dealers. In that case, the defendant allegedly cheated all of the class members in the same way in one fell swoop, and once the plaintiffs proved that the defendant made the price change, each individual plaintiff's breach of contract claim was substantially advanced. *Id.* In contrast, if, after adjudication of classwide issues, the plaintiffs must still introduce "a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay*, 382 F.3d at 1255.[3] In *Klay*, for example, the plaintiff doctors contended that the defendant HMOs breached their contracts by failing to reimburse the plaintiffs at a reasonable rate for medically necessary services they provided. *Id.* at 1263. The

---

[3]Put another way: "[I]f the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues . . . are important." "If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate." *Klay*, 382 F.3d at 1255 (internal quotation marks omitted).

7

Eleventh Circuit concluded that the doctors' breach of contract claims against the HMOs could not be certified because individualized issues of fact existed as to whether there was a breach—one doctor proving that his HMO did not reimburse him at a reasonable rate for medically necessary services would not show that any other doctor was underpaid on a particular occasion. *Id.* at 1264.

The prospect of having to apply different state laws to different claims requires that particular scrutiny be given to requests for nation-wide certification of state law breach of contract claims. In determining whether common legal issues predominate over individual ones, the Court must analyze whether the laws of different states apply, and if they do, whether that law is uniform. Here, the Court will generally have to apply the law of the state where each contract was made, unless the Court finds that there are no material differences in the applicable state laws. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985). "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Klay*, 382 F.3d at 1261 (internal quotation marks omitted). Thus, "class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim." *Id.* However, class certification is a realistic policy "if a claim is based on a principle of law that is uniform among the states" or "if the applicable state laws can be sorted into a small number of groups, each containing materially

8

identical legal standards[.]" *Id.* at 1262.  Plaintiff has the burden to show uniformity among the laws of the fifty states or that there is a small, groupable number of applicable standards.  *Id.*

To determine whether individual issues predominate over common ones in this case, it is necessary to examine preliminarily what the putative class members must prove to establish that Defendant breached its contracts with them by withholding their unearned premiums.  As noted previously, Defendant's contracts are generally uniform in their recognition that when the insurance coverage is terminated early, the insured is entitled to a refund of the unearned premium.  However, the insurance contracts are not uniform as to what triggers the duty to make the refund.   Some contracts require the insured to notify Defendant that the insured has paid off the underlying loan early, thus terminating the insurance.  Most of the contracts appear to be silent on this issue, giving rise to the question whether an implied duty exists to make the refunds and the extent of that implied duty.

Clearly, Defendant's refusal to return unearned premiums upon being notified of a claim for them would be actionable.  However, that is not the class that Plaintiff seeks to certify.  Plaintiff seeks to certify a class that includes all insureds who have paid off their underlying loans early and thus would be entitled to a refund of unearned premium if a claim were made.  The question arises as to *when* Defendant is in breach of its contract.  If the timing of the breach is uniform, class treatment may be appropriate.   In this case,

9

however, the answer to this question is neither uniform nor clear. For example, does liability arise the moment the underlying loan is paid in full, regardless of whether Defendant has been notified of the payoff?  Does liability arise within some reasonable period of time after the loan is paid?  If so, what is that reasonable period of time, and is it uniform for each putative class member and under each applicable state's law?  Does liability only arise upon being notified of the payoff?  Does liability arise if Defendant has access to information that would put a reasonable person on notice that the loan has been paid off?  Does liability arise at that point in time when a reasonably prudent insurer employing a reasonably prudent investigation system would have discovered the early payoff?  If so, is that point in time uniform for each class member and under each applicable state's law?

This issue may not be an obstacle to certification if the individual insurance contracts and/or each applicable state's law answered these questions in a uniform manner, but they do not.  The answers depend first upon the language in the individual contracts, and if those contracts are silent on the subject, the answers depend upon whether the circumstances authorize the Court to impose an implied duty upon the parties that they did not expressly include in their contracts.  Therefore, in this case, the Court will first have to examine each contract to determine whether the parties addressed the issues of how and when Defendant owed the refund of the unearned

premium and whether Defendant's failure to pay it constitutes a breach under the parties' agreement.  If examination of the individual contract reveals that it does not address the issue, then the Court must determine whether an implied duty exists.  Plaintiff argues that for those contracts that are silent on the subject the Court should find that an implied duty exists requiring Defendant to undertake reasonable steps to discover the early payoffs.  Moreover, Plaintiff presumably maintains that the implied duty is the same for every insurance contract with every insured, no matter what the contract says or in what state it was executed.

The Court is skeptical as to whether Defendant can be in breach of a contract upon the early payoff of the underlying loan when it has not been notified or learned of the early payoff.  Yet, that is the legal assumption Plaintiff makes in his motion.  Even if a theoretical duty to discover the early payoff of the underlying loans could be implied in the contracts, the possibility of the existence of this duty in individual contracts does not warrant class certification. To support class certification, the implied duties must be substantially similar and uniformly ascertainable.  They are not.  For the Court to find whether an implied duty exists, the Court would be required to examine the law of each state where the contracts were issued and then examine the individual circumstances of each case to determine whether a duty should be implied and the extent of that

duty.  Then, when the duty has been implied, the Court would need to determine—for each insured—whether that duty was breached.

The Court has no trouble accepting the general proposition that Defendant has a duty grounded in good faith to perform its contractual duty to refund unearned premiums in a manner consistent with the likely intentions of the parties.  However, it would be sheer judicial contrivance to craft a uniform rule that applies to every one of Defendant's insureds, regardless of the individual circumstances and differences in the applicable state law.  For example, to determine if a uniform implied duty even exists, the Court would have to examine the laws of each state where putative class members' contracts were entered into to find when that state's law authorizes a court to imply a term—and what term a court may imply—into a contract.  Neither party has pointed the Court to any authority on this issue, much less authority regarding the uniformity of state law on the issue of when the Court may imply a term into a contract.  That alone presents an impediment to certification.  *See Klay*, 382 F.3d at 1261.

Implying contractual duties upon parties who neglected to spell out those duties in their written contracts typically requires a uniquely individual analysis on a case-by-case basis.  For example, under Georgia law, courts are "generally reluctant to make contracts for the parties" but may imply promises "when justice, good faith, or fairness so demand." *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.*, 291 Ga. App. 808, 811,

662 S.E.2d 745, 748 (2008).   A court may not imply a term into an agreement unless "there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties." *Id.; see also, e.g., WesternGeco, LLC v. Input/Output, Inc.*, 246 S.W.3d 776, 783 (Tex. App. 2008) ("To imply a term into an agreement, it must appear that it is necessary to do so in order to effectuate the purposes of the contract as a whole as gathered from the written instrument."); *Field v. Costa*, 958 A.2d 1164, 1169 (Vt. 2008) (noting that Vermont courts "do not insert terms into an agreement by implication unless the implication arises from the language employed or is indispensable to effectuate the intention of the parties") (internal quotation marks and emphasis omitted).   While these standards may appear similar, uniform application of them is problematic.   To imply, as Plaintiff suggests, a duty on Defendant to have a system for finding out when early payoffs are made, the Court would, at a minimum, have to examine the language of each contract, evaluate each insured's relationship and course of dealing with Defendant, and then determine under all of the circumstances whether "good faith, justice or fairness" (or some other state's standard) requires implying a particular term in a particular insured's contract.   Under this approach, the putative class members would each have to produce individualized proof and argue

individualized legal points to establish the elements of their individual claims. *See Klay*, 382 F.3d at 1255.

The Court emphasizes that the putative class claims here do not rest upon the interpretation of a single contract provision that exists in every potential class member's contract; the claims depend in large part upon whether the Court as a matter of law shall imply a term that was not otherwise included by the parties in their written agreements. Moreover, Plaintiff would have this Court imply a duty on Defendant to discover when the insured paid off his loan to a third party early, and yet impose no duty upon the insured who, having paid off the loan early, is in the best position to inform Defendant that his loan has terminated and thus he is entitled to a refund. In determining where this duty should be placed, the Court at a minimum must engage in an individualized case by case analysis, one that quite simply is not amenable to a uniform or formulaic application. Thus, the Court concludes that the individual issue of whether to imply the duty on Defendant as Plaintiff suggests predominates over any questions common to the class. *See, e.g., id.* at 1263-65 (finding that plaintiffs' breach of contract claims could not be certified, notwithstanding uniform relevant law, because individualized issues of fact existed as to whether there was a breach).

Complicating matters further, even if the Court found that Defendant had some duty to discover the early payoffs, the Court would next have to define the nature and extent of that duty with sufficient

specificity for it to be enforceable.  Is that duty satisfied if Defendant expressly required notification by its insureds of an early payoff?  Does that duty call for Defendant to require third parties through whom it sells its products to notify Defendant when the third party becomes aware of an early payoff?  Must Defendant troll its insureds' credit reports to ascertain when a loan is paid off early?  The nature and extent of this duty will necessarily depend upon the specific language in the insurance contracts, the circumstances surrounding the insurance transactions, and an individualized evaluation of whether implying such a duty is consistent with the reasonable expectations of the parties.  Furthermore, even if the Court found a uniform implied duty in every contract, the Court would have to examine the individual circumstances of each claim to determine whether that duty has been breached.  Surely, the duty is not breached solely because an underlying loan was paid off early (which appears to be the assumption necessary for class certification here).  Does Defendant breach its duty by failing to refund an unearned premium within 7 days of an early payoff? 15 days? 60 days? Does it matter if Defendant is notified of the early payoff?  Does it matter if Defendant waits until the loan's scheduled termination date and then investigates whether the loan was paid off early, and upon finding that it was, makes a refund with interest?  There are a myriad of possibilities that depend upon the individual circumstances

15

of each case.  For this reason, this action is ill suited for class action treatment.

Perhaps Plaintiff contends that Defendant's breach was complete upon the filing of this putative class action for all insureds who had paid off their loans early as of the filing date of this action. While the filing of a lawsuit may satisfy a contractual notice provision for the individual plaintiff who filed the lawsuit under some states' laws, *e.g., J.M.I.C. Life Insurance Co. v. Toole*, 280 Ga. App. 372, 374, 634 S.E.2d 123, 126 (2006), the fact that the named Plaintiff may have satisfied a condition precedent in his contract does not mean that he may do so on behalf of every other member of the class.  Furthermore, even if the class action provides notice to Defendant on behalf of all of its insureds—which is doubtful—the mere filing of the putative class action does not eliminate the necessity of having to examine each individual claim to determine the extent of Defendant's duty to discover the termination of the underlying loans and the extent of any corresponding breach.[4]  It would be a peculiar legal principle indeed that allows the mere filing of a putative class

---

[4]This is different than the simple satisfaction of a general notice requirement.  *Cf. Suntrust Bank v. Hightower,* 291 Ga. App. 62, 67, 660 S.E.2d 745, 749 (2008) (noting that purpose of notice requirement can be served by individual plaintiff's filing of complaint because the complaint gives notice of early payoff to insurer, who lacks such knowledge.)  In the present case, the filing of this putative class action does not notify Defendant of which insureds have made an early payoff and thus may be entitled to a refund.  It simply alleges that some of Defendant's unidentified insureds have paid off their loans early and thus may be entitled to a refund of unearned premium, and you must therefore find out who they are and how much you owe them, even when they have not notified you of the early payoff.

16

action to impose an implied legal duty in the contract of every possible member of the putative class.

For all of these reasons, the Court concludes that individual questions of law and fact predominate over the common questions and that Plaintiff's breach of contract claim is not suitable for class certification under Federal Rule of Civil Procedure 23(b)(3).[5]

CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Certify (Docs. 86 & 230) is denied.[6]  All remaining pending motions are hereby denied as moot.

---

[5]The Court further finds that Plaintiff's request for certification under Rule 23(b)(2) suffers from the same deficiencies. For the Court to determine whether a Rule 23(b)(2) class should be certified, the Court must find that Defendant acted similarly with regard to the class as a whole.  *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344-45 (11th Cir. 2006) (finding that certification of 23(b)(2) class was not appropriate because even if plaintiff proved that he was entitled to relief, that proof would not show that any other potential class members were also entitled to relief). Since Defendant's actions must be gauged in light of the circumstances surrounding each putative class member's contract to determine whether an implied duty to discover the early payoffs existed, class-wide relief is not appropriate.

[6]The Court is certainly cognizant of its recent certification of a settlement class in *Perkins v. American National Insurance Co.*, No. 3:5-CV-100 (CDL), 2009 WL 111631, at *1-3 (M.D. Ga Jan. 14, 2009), which involved allegations similar to those here.  The Court observes that the certification of that settlement class is not inconsistent with the Court's ruling today because the defendant there did not contest the plaintiffs' contention that the defendant had an affirmative duty to determine the loan termination dates.  Moreover, by conceding that issue and agreeing to settlement, the parties eliminated any need for the Court to make such individual determinations for each putative class member.

17

IT IS SO ORDERED, this 9th day of February, 2009.


                                    S/Clay D. Land
                                         CLAY D. LAND
                                  UNITED STATES DISTRICT JUDGE